**Patricia Dawn HOUSE, Appellant,**

v.

**Patrick Jenkins HOUSE, Appellee.**

**No. S–2882.**

Supreme Court of Alaska.

Sept. 8, 1989.

**12.** We have considered the other arguments on appeal and conclude that they are without merit.

Patricia Dawn House, pro se, Homer.

William T. Ford, Anchorage, for appellee.

## OPINION

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

MOORE, Justice.

This child custody case concerns the children of Patricia and Patrick House. Patrick now has custody of the parties' two children, and he intends to move with them to California. Patricia requested a change of custody which the superior court denied. The issues on appeal are whether the superior court erred in denying a request for continuance and whether the court erred in finding that Patricia did not present sufficient evidence to justify a change in custody.

### I.

Patricia and Patrick House were married in December of 1979 and divorced on February 2, 1984. The marriage produced two children: Diana, born January 11, 1980 and Kyle, born May 28, 1982. In the divorce proceeding, Patrick defaulted and the court awarded Patricia custody of both children. In 1984, Patricia was ill and unable to care for the children. As a result, on February 20, 1985, the parties agreed to have the decree amended to make Patrick the "main custodial parent" of the children and to give Patricia custody for 30 days during each summer.

In November of 1987, Patrick informed Patricia that he and his new wife intended to move with the children to California. Patricia then requested the court to return primary custody of the children to her. In Patricia's memorandum to support her motion, she claimed that Patrick's custody of the children was intended to be temporary while she recovered from her drug addiction and financial difficulties. She presented the court with a financial declaration

indicating that she currently earned $700 per month through her employment.

On May 31, 1988, a hearing was held before Master Lucinda McBurney. Kathy Yeotis, the custody investigator who had been assigned to the case, testified that her investigation as to the change of custody motion was not complete. Nevertheless, Master McBurney recommended that 1) Patricia have summer visitation rights of one month, 2) a Change of Custody Hearing be held before Superior Court Judge Carlson on June 22, 1988, and 3) Patrick be permitted to remove the children from Alaska pending resolution of the change of custody if the issue was not resolved on June 22, 1988.

Patricia moved on June 21 to continue the June 22 hearing. She claimed that she needed access to the children's school records, needed to have psychological examinations of all parties conducted, and needed 10 days within which to review the child custody investigator's report, which was not complete at the time. On June 22, 1988, Judge Carlson denied the motion and conducted the hearing. After hearing from Patricia, Patrick's attorney and the child custody investigator, the superior court held that primary physical custody would remain with Patrick. Patricia was granted eight weeks of visitation each summer and ordered to pay child support of $40 per month per child. Patrick was awarded $250 in attorney's fees as the prevailing party. Patricia appeals.

## II.

█ Patricia argues that her due process rights were violated because she did not have adequate notice and time to prepare for the hearing.[1] She contends that the pretrial order clearly states that no hearing would be scheduled until after the custody investigator's report was filed and made available to the parties, unless emergency or extraordinary circumstances prevented

it. Judge Carlson denied Patricia's motion to continue the hearing without stating a reason.

█ This court will not disturb a trial court's refusal to grant a continuance unless an abuse of discretion is demonstrated. *Gregoire v. National Bank of Alaska,* 413 P.2d 27, 33 (Alaska 1966); *see also Sanguinetti v. Sanguinetti,* 628 P.2d 913, 916 n. 3 (Alaska 1981). An abuse of discretion exists when a party has been "deprived of a substantial right or seriously prejudiced by the lower court's ruling." *Barrett v. Gagnon,* 516 P.2d 1202, 1203 (Alaska 1973).

We agree with Patricia that the superior court did not follow the pretrial order. The order states on page 3:

7. Child Custody Determination.

All motions seeking a determination of child custody shall be referred to the court custody investigator when it is known that the motion is at issue.... No hearing shall be *calendared* or heard, absent emergency circumstances or other justification, until completion of the investigation.

(Emphasis added). Here, the hearing was scheduled despite the undisputed fact that the investigation was not complete. However, the investigation was completed by the time the hearing took place, and the investigator's testimony was considered by the superior court. Although she did not have a written copy of the report before the hearing, Patricia had opportunity at the hearing to contest the investigator's findings. She has not presented evidence establishing any prejudice she may have suffered as a result of the court's refusal to continue the hearing.

Furthermore, we think Patricia had adequate time to prepare for the hearing. She moved to modify the amended divorce decree on May 3, 1988. On June 9, she was given actual notice of the date of the hearing. The hearing was held on June 22, 1988. She thus had from May 3 to June 22

---

1. Patricia states that Master McBurney's secretary only notified her of the hearing date by telephone on June 9, 1988. She further claimed that she had requested psychological exams of all parties, including the children, and that the

child custody investigator told her on June 2 that she would take her request under consideration and let her know by June 16 whether she would recommend psychological exams.

to pursue psychiatric examinations of the children; she was not required to wait for the investigator's approval.

■ Patricia has not shown that the court's failure to postpone the June 22 hearing has deprived her of a substantial right or caused her serious prejudice. Patricia's right to seek custody of her children is a substantial one which the courts strive to protect, but this court will not lightly overturn a lower court's decision which was based on a review of all the relevant evidence and in which the complaining party had reasonable opportunity in court to introduce evidence and contest the other side's evidence. Inability to mount a successful case does not mean that due process was violated or that an abuse of discretion occurred. We thus hold that Judge Carlson did not abuse his discretion in denying Patricia's motion to continue the hearing.

### III.

Patricia argues that the court failed to consider the statutory criteria for awarding child custody[2] by failing to conduct an examination into the children's preferences and their emotional and mental needs. The superior court concluded:

Plaintiff has submitted insufficient evidence of any changed circumstances in the present custodial arrangements *likely to be detrimental* to the children so as to warrant any change of custody. The recommendation of the custody investigator that primary physical custody of the parties' two minor children continue with the Defendant is adopted by the Court.

(Emphasis added).

This court will only disturb the trial court's resolution of custody issues "if the

record shows an abuse of discretion or if controlling findings of fact are clearly erroneous." *Faro v. Faro*, 579 P.2d 1377, 1379 (Alaska 1978).

A court will modify an existing custody arrangement only when "a substantial change in circumstances requires the modification of the award and the modification is in the best interests of the child." AS 25.20.110. *See Garding v. Garding*, 767 P.2d 183, 184 (Alaska 1989). "In contrast to the initial award of custody, which, in disputed cases shall be granted 'on the basis of the best interests of the child,' AS 25.20.060(a), modification of a custody award depends upon a change in circumstances." *Garding*, 767 P.2d at 184–85. *See also S.N.E. v. R.L.B.*, 699 P.2d 875, 878 (Alaska 1985). The burden of proving a substantial change of circumstance is on the moving parent. *Garding*, 767 P.2d at 185; *S.N.E.*, 699 P.2d at 878.

When the child has been on a relatively stable custody-visitation schedule for a period of time and the primary custodial parent decides to leave the state, the child is faced with a potentially disturbing and upsetting change in circumstances. The child is likely to have less frequent contact with the noncustodial parent who continues to reside in the state. Existing visitation arrangements assume that the parents will continue to live in the same geographic area, and thus will require modification and change when distances increase between the child and the noncustodial parent.

■ The purpose of maintaining stability in custody arrangements is thus defeated by the custodial parent's decision to leave Alaska. We therefore hold that the custodial parent's decision to leave the

---

**2.** AS 25.24.150(c) states:

The court shall determine custody in accordance with the best interests of the child under AS 25.20.060–25.20.130. In determining the best interests of the child the court shall consider

(1) the physical, emotional, mental, religious, and social needs of the child;

(2) the capability and desire of each parent to meet these needs;

(3) the child's preference if the child is of sufficient age and capacity to form a preference;

(4) the love and affection existing between the child and each parent;

(5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;

(6) the desire and ability of each parent to allow an open and loving frequent relationship between the child and the other parent.

state with the children constitutes a substantial change in circumstances. If the parents cannot agree on a mutually-acceptable custody and visitation arrangement,[3] the non-custodial parent is entitled to a judicial hearing to resolve whether the best interests of the child require a change in the existing custody or visitation order.[4] Judge Carlson heard from Patricia, considered the recommendation of the child custody investigator, and determined that it would not be detrimental to the children to remain with their father when he moved to California.

■■■ The lower court's ruling is phrased in terms of Patricia's failure to show likely detriment. Patricia need only show a change in circumstances before being entitled to a hearing on the children's best interests. We hold that the move to California is such a change in circumstances. We regard the court's ruling as equivalent to a determination that remaining in Patrick's custody and moving to California would be in the children's best interests; we review it on that basis.

Evidence on the record supports such a finding. The children have lived with their father for over three years, as the amended decree was entered in February 1985. Kyle, the parties' seven year old boy, is legally blind and needs special services for handicapped children. Patricia does not deny that the handicapped services available in Berkeley are better than those available in Homer.

Furthermore, the court's determination was made in light of Ms. Yeotis' oral report. Ms. House did mention that Diana had expressed a desire to live with her mother, but the court could have concluded that she was too young for her opinion to be controlling. Patricia has made no showing that the court did not consider the children's emotional needs. The custody investigator's report clearly addresses this issue. The court properly considered this report in making an evaluation of the children's emotional needs.

Patrick planned to move to Berkeley so that his wife could pursue her Ph.D. in Psychology. Clearly, this decision of the family to move to Berkely was based upon a valid reason, that is, a reason which was not primarily motivated by a desire to make visitation by Patricia more difficult. Most states permit custodial parents to move out of state with their children if there is a legitimate reason for the move. 1 J. Atkinson, *Modern Child Custody Practice* § 7.01, at 390 (1986). Application of the statutory criteria in AS 25.24.150(c) to the facts in the record does not suggest a different result. We hold that the superior court therefore did not abuse its discretion.

IV.

■■ In accordance with Civil Rule 90.3, the superior court ordered Patricia to pay the minimum required child support of $40 per month per child.[5] Patricia claims that

---

3. We agree with the legislative determination that "it is in the best interests of a child to encourage parents to implement their own child care agreements outside of the court setting." Ch. 88, § 1(b), SLA 1982 (quoted in *Garding v. Garding,* 767 P.2d 183, 185 (Alaska 1989)).

4. In this regard, Professor Clark states:
 If the parties are operating under a joint legal or physical custody decree and one of them proposes to move to a distant place, the cases disagree on whether or to what extent this should justify a modification of the joint custody order. Some of them refuse to modify the order on the theory that the move does not constitute a sufficient change in circumstances to meet the statutory test. The effect of this may be to cut off one parent or the other from the close contact with the child which he had previously enjoyed. Other

cases take the more sensible course of attempting to rearrange the custody decree in such a way as to make the removal feasible but at the same time to maintain the child's contacts with both parents. Analytically the effect of removal in these cases is very similar to its effect on the usual sole custody order when the custodian wishes to move and the non-custodial parent seeks to prevent the move in order to preserve his visitation rights. 2 H. Clark, *The Law of Domestic Relations in the United States* § 20.9, at 555 (2d ed.1987) (footnotes omitted).

5. Alaska R.Civ.P. 90.3(c) states in part:
 (1) The court may vary the child support award as calculated ... for cause.... Good cause may include a finding:
 (B) ... that the parent with the child support obligation has an adjusted income which

the superior court erred in ordering her to pay child support without knowing her financial status.

This court has made exceptions to Rule 90.3. *See Faro*, 579 P.2d at 1380 (court erred in ordering $200/month total child support from mother where unemployed mother had no definite offers of employment and father testified to not needing child support). However, Patricia was employed at the time of the hearing. She submitted to the court her financial declaration which showed that she could afford to pay minimal child support. Therefore, the court did not abuse its discretion in determining that Patricia should pay a total of $80 per month. If at some time she cannot afford the payments, she may move for a temporary suspension or reduction pursuant to Rule 90.3.

■ It is not clear from the record that the superior court believed that it had authority to consider Patricia's request that she not pay child support so that she could accumulate funds to pay for her children's airfare for summer (or additional) visitation. Clearly, the superior court did have authority to consider Patricia's request and could have at least considered the following:

> Geographic separation of the noncustodial parent and child results in added costs for visitation. The costs can include transportation of the child to and from the noncustodial parent's home or transportation and lodging for the noncustodial parent during visits to the child's new hometown. *In order to facilitate visitation, child support may be reduced to allow the noncustodial parent to accumulate funds for transportation costs.* Alternatively, the custodial parent could be directed to pay all or a portion of the transportation costs. Such arrangements are particularly appropriate if the noncustodial parent has limited financial means and the custodial parent

is below the poverty level as set forth in the Federal Register. However, a parent who would be required to pay child support pursuant to paragraph (a) or (b) must be ordered to

has moved in order to obtain an economic advantage.

1 J. Atkinson, *Modern Child Custody Practice* § 7.11, at 403 (1986) (footnote omitted). *See, e.g., D'Onofrio v. D'Onofrio*, 144 N.J.Super. 200, 365 A.2d 27, 31, 33 (Ch. Div.), *aff'd*, 144 N.J.Super. 352, 365 A.2d 716 (App.Div.1976).

In the future, should Patricia's request here need to be reconsidered, then she can file an appropriate motion for such relief.

## V.

■ Patricia contests the superior court's award of attorney's fees to Patrick. The superior court found that Patrick should receive "$250 in attorney fees as the prevailing party on the Motion for Child Support and for successfully defending against the Motion for Change of Custody."

In *L.L.M. v. P.M.*, 754 P.2d 262 (Alaska 1988), we held that the award of attorney's fees based on the application of Civil Rule 82's prevailing party standard is inappropriate in post-judgment modification or enforcement motions concerning visitation and custody issues. Instead, attorney's fees should only be awarded where one party acts "willfully and without just excuse." *Id.* at 265. Judge Carlson made no finding of bad faith. Therefore, he improperly awarded attorney's fees to "the prevailing party." We reverse the award of $250.

The judgment of the superior court is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.

RABINOWITZ, J., with whom MATTHEWS, C.J., joins, dissent.

RABINOWITZ, Justice, with whom MATTHEWS, Chief Justice, joins, dissenting.

Study of the record leads me to the conclusion that the superior court abused its

pay a minimum child support amount of no less than $40.00 per month except as provided in subparagraphs (a)(3) and (b)(4).

discretion in denying Patricia House's motion for a continuance.[1] In my opinion the superior court's denial of the motion substantially prejudiced Patricia in that it deprived her of the ability to present her case as a parent in regard to these very important child custody and visitation issues.[2]

Of controlling significance here is the circumstance that a pro se litigant was apprised by the superior court's pre-trial order that "No hearing ... shall be calendared or heard, absent emergency circumstances or other justification, until completion of the [child custody investigator's] investigation." Because of the superior court's denial of a continuance, Patricia was compelled to participate in the custody hearing without the benefit of having had the opportunity to study the recommendation of the child custody investigator. No emergency circumstance or other justification appears in this record which would warrant the superior court's proceeding with the hearing prior to the completion of the child custody investigator's investigation and the filing of her report.

The record indicates that Patrick intended to leave Alaska for California as soon as possible after the end of the summer visitation period for Patricia. The visitation period was to end by July 4. The hearing was held on June 22. Assuming that the child custody investigator would have still completed her investigation on June 22 even had the hearing not been scheduled for that day (thus making the calendaring of a hearing timely as of that day), there was still sufficient time to provide Patricia

with a copy of the report and permit her a week or ten days to prepare for the hearing before the end of her visitation period.

Contrary to the majority's assertion, Patricia did not have from May 3 to June 22 to pursue psychiatric or psychological examinations of the children. Patricia was not waiting for the child custody investigator's "approval" to have herself and her children examined by a psychiatrist or psychologist at her own expense. Patricia was waiting for the custody investigator's decision as to whether or not to request that such examinations be conducted (presumably at the state's expense).[3] Patricia states that she was told on June 2 that the child custody investigator would let her know by June 16 whether she would recommend the examinations. The custody investigator testified that she had no recollection of calling Patricia or promising to do so, but acknowledged that an error as to this matter on her part or Patricia's part (or both) was plausible.

Adequate preparation for a custody hearing is a sufficiently difficult task for a pro se litigant without the extraordinary, complicating factor of requiring the pro se litigant to prepare her case at the custody hearing. In the case at bar Patricia lacked funds to hire an expert. Nor was she given the time to hire one even if she had the funds. Also, given the time constraints which were imposed on her by the denial of the motion for a continuance, Patricia was hampered in her ability to prepare an effective cross-examination of the child custody investigator.[4]

1. Patricia, acting pro se, based her motion for continuance on the following grounds: (1) discovery was incomplete, as she had not been given access to the children's school records; (2) psychological examinations of Patricia, Patrick, Patrick's present wife, and the children had not been conducted; and (3) the child custody investigator's report had not been completed, and she wanted 10 days to review the report. Patricia's motion was made on June 21. The hearing was scheduled for the following day—June 22.

2. *Barrett v. Gagnon,* 516 P.2d 1202, 1203 (Alaska 1973).

3. The record suggests that Patricia had no money of her own to pay for such examinations.

4. Patricia's description of the proceedings is forcefully described as follows:

In this case, no time was allowed for discovery; an incomplete investigation was conducted; no witnesses were allowed to be called; the children's preference was not inquired into even though one child desired to remain in Alaska; and there was obvious visitation problems as Patricia had to file a Motion to Compel summer visitation since Patrick was denying visitation.... Even though a hearing was held, it plainly did not comport with due process, and was a far cry from a full and fair hearing.

Given the foregoing I would reverse the superior court's judgment and remand for a full hearing.