**David C. BROWN, Appellant,**

v.

**Patricia Woods BROWN, Appellee.**

**No. S–8503**

Supreme Court of Alaska.

July 30, 1999.

---

James H. Brown, Accokeek, Maryland, and Pamela D. Scott, Law Offices of Pamela D. Scott, Anchorage, for Appellant.

Jody A. Reausaw, Josephson & Associates, Anchorage, for Appellee.

Before: MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

*OPINION*

FABE, Justice.

## I. *INTRODUCTION*

David C. Brown appeals the superior court's order that he pay child support to his ex-wife Patricia Woods Brown on behalf of his son Christopher. The superior court rejected David's arguments that Patricia waived child support by allowing David to pay agreed-upon sums into a trust fund, that he should receive credits for certain expenses, and that the statutes governing interest on child support arrears do not apply to him. Because we find no error, we affirm.

## II. *FACTS AND PROCEEDINGS*

David C. Brown and Patricia Woods Brown divorced in 1987. Their son Christopher was born August 20, 1985. As part of the divorce proceedings, David and Patricia executed a comprehensive settlement and property division agreement that was incorporated into the divorce decree. Pursuant to their agreement, Patricia and David shared joint legal custody of Christopher, but Patricia had sole physical custody.

Rather than having one parent pay child support directly to the other, David and Patricia agreed to set up a trust fund for Christopher:

[S]ince both parties are financially able to provide for the care and support of the minor child, the noncustodial parent will make monthly child support payments of $300.00 per month into a trust fund for the benefit of the minor child.

. . . .

... Husband shall pay child support into an interest bearing account for the benefit of the minor child.

. . . .

The Husband shall be named as Trustee of the account and shall provide the Wife with quarterly statements of amounts in the fund.

The agreement set out three categories of expenses the fund monies would cover: visitation expenses, extraordinary medical expenses, and educational costs. Both parents agreed to use any funds remaining in the trust when Christopher turned eighteen for his post-secondary education. As part of this arrangement, Patricia consented "to waive all past and present child support payments which she may have been entitled to receive on behalf of the minor child."

David failed to establish and maintain a trust fund for Christopher. He did open an account with $1,000 in 1988 or 1989, but within a year he closed the account and withdrew the money to pay his personal bills. He opened another account sometime before 1991 but again withdrew all the funds in the trust to help pay the closing costs on his home. David testified that he paid for any and all of Christopher's expenses that should have come out of the trust fund, such as travel expenses. But David did not provide Patricia with more than one or two of the quarterly reports required by the agreement.

In March 1993 David and Patricia executed a "Proposed Plan of Action," which set out changes in Christopher's custody and child support while Patricia went back to school. The parties agreed that Christopher would temporarily live with David and attend third and perhaps fourth grade in Anchorage and that David would "assum[e] full financial responsibility for Christopher's care during this period." But they stated that Patricia would remain Christopher's "custodial parent as set forth in the divorce decree." Christopher lived with Patricia until May 1993. Christopher lived with his father in Anchorage beginning in June 1993; his paternal grandmother, Josephine Brown, moved in with David to help care for Christopher while David worked.

In November 1994 David petitioned for modification of the child custody agreement and was granted interim custody of Christopher. In March 1996 the superior court issued a final custody order that maintained shared legal custody between the parents and established that Christopher would live

with his father until the end of the eighth grade and then live with his mother during high school. The court ordered that Alaska Civil Rule 90.3 would govern future child support except for visitation expenses.

In June 1996 the superior court ruled that David owed child support arrears (funds that he should have paid into the trust) dating from the divorce in 1987 until May 1993, with deduction for credits outlined in the dissolution agreement. The court ruled that Patricia owed no child support for the period from December 1994 through March 1996, during which time Christopher lived with his father. David sought reconsideration and clarification of that order. Both parents requested the services of the Child Support Enforcement Division (CSED), which filed an amicus brief arguing that child support distribution should proceed without any trust fund mechanism and that David was entitled only to limited credits.

Testimony at the hearing to address the motion for reconsideration focused on the agreement in the divorce decree, the trust fund, and David's request that various credits offset his child support arrears. The superior court disestablished the trust fund and ordered that David pay any unpaid child support to Patricia through CSED. The court reconsidered its earlier order and held that Patricia was required to pay child support from December 1994 to March 1996 but that David's child support obligation could fully offset Patricia's smaller obligation. The court also refused to allow David to claim credits for a variety of expenses.

CSED moved for reconsideration of the 10.5% interest rate on David's child support arrears. The superior court granted CSED's request and modified its judgment to reflect the statutory rate of interest—12% before October 1, 1996 and 6% thereafter—on David's accumulated arrears.

David filed for bankruptcy in April 1997. CSED filed a request that David pay the owed child support out of exempt property.

David did not oppose this motion, and the trial court granted it. In October 1998 CSED paid to Patricia $15,600 in child support it recovered from David. David appeals.

## III. STANDARD OF REVIEW

We exercise our independent judgment when reviewing the legal interpretation of property settlements and child custody agreements that are incorporated into divorce decrees.[1] But when the trial court looks to extrinsic evidence to interpret an agreement, we review its factual determinations under the clearly erroneous standard and will reverse only if the facts do not support the trial court's interpretation.[2]

In general, we will reverse factual findings of the superior court only if they are clearly erroneous, that is, if we are left with a definite and firm conviction that the trial court erred.[3] We review de novo interpretations of statutes or rules; we will adopt the rule of law most consistent with precedent, reason, and policy.[4]

## IV. DISCUSSION

A. *The Superior Court Did Not Err by Disestablishing the Trust Fund and Ordering David to Pay Child Support to Patricia.*

David first argues that Patricia waived her rights to child support by signing the settlement agreement. Patricia responds that both the language of the agreement and extrinsic evidence support the superior court's conclusion that Patricia did not waive her right to receive child support on Christopher's behalf. We agree.

When interpreting contracts, courts aim to give effect to the reasonable expectations of the parties as expressed through the text of the contract and extrinsic evidence of

---

1. *See Cedergreen v. Cedergreen,* 811 P.2d 784, 786 n. 2 (Alaska 1991).

2. *See Vokacek v. Vokacek,* 933 P.2d 544, 547 (Alaska 1997).

3. *See Linstad v. Sitka School Dist.,* 963 P.2d 246, 248 (Alaska 1998).

4. *See Boone v. Gipson,* 920 P.2d 746, 748 (Alaska 1996).

intent.[5] David and Patricia signed the settlement agreement prior to the enactment of Rule 90.3; at that time, parents could waive the right to receive child support on behalf of their children if the waiver was not detrimental to the child. Here, the language of the agreement does not specify whether the parties intended the settlement agreement to operate as a waiver of child support.[6] But the provisions regarding the trust fund money consistently refer to those funds as "child support." The agreement also mentions the trust fund money in the same paragraph as traditional child support funds without indicating that the two are separate and distinct in character. Patricia testified that, by signing the agreement, she only intended to set up a mechanism to reserve those funds for limited uses, not to waive all child support. Relying on this testimony and the ambiguities of the agreement's text, the superior court found that "[t]here is no indication that child support was waived by Ms. Brown agreeing to have a trust agreement for the benefit of Christopher." Because the facts support this interpretation, the superior court's conclusion was not clearly erroneous.

Alaska law supports the superior court's decision to interpret the trust fund payments as child support. In *In re Adoption of K.M.M. and B.M.M.,*[7] we held proper maintenance of a trust fund fulfilled, rather than replaced, the child support obligation. In *K.M.M.,* a father who paid his child support payments into a trust fund rather than directly to his ex-wife fulfilled his child support obligations because, like traditional child support, "the trust fund, probably to be used for the children's needs in the future, was a permissible way to discharge his obligation to provide for their support, which obligation was a continuing one until the children reach the age of majority."[8]

■ David further argues that because he owed money only to the trust fund, the superior court could not force him to pay any money directly to Patricia. We disagree. As Patricia notes, a superior court has the "inherent power, and also the duty, to enforce its decrees."[9] In *Johnson v. Johnson,*[10] the parties' divorce decree included a provision that the family homestead be sold and the proceeds be deposited in a trust to be used for the education of the Johnsons' minor children.[11] When the parents made no efforts to establish the trust for seven years, the superior court ordered that the land be partitioned and each child be given one-quarter of the property. Mrs. Johnson argued on appeal that the court had no power to modify the contents of the trust. We disagreed, noting that the superior court "made alterations necessary to obtain a result altogether consistent with the original decree" given that the parents had not in fact established the trust fund.[12] We also emphasized the need "to preserve the rights of children who are not represented in the proceedings."[13]

■ Similarly, David's complete failure to establish and maintain the trust gave the superior court the power and duty to alter its original decree to ensure that Christopher receive the funds the parties intended by establishment of the trust. David twice opened accounts intending to establish the trust fund, but both times withdrew the money to use it for his own purposes. He did not make regular payments into the account, nor did he provide Patricia with the quarterly reports mandated by the agreement. He testified at the hearing that no money existed in any account for Christopher. Through these actions, David materially breached the agreement and his fiduciary duties to the

5. See *Fairbanks North Star Borough v. Tundra Tours, Inc.,* 719 P.2d 1020, 1024–25 (Alaska 1986).

6. See *Malekos v. Yin,* 655 P.2d 728, 730 (Alaska 1982), *superseded by rule as stated in Cox v. Cox,* 776 P.2d 1045, 1048 (Alaska 1989).

7. 611 P.2d 84 (Alaska 1980).

8. *Id.* at 87.

9. *Wahl v. Wahl,* 945 P.2d 1229, 1232 (Alaska 1997).

10. 544 P.2d 65 (Alaska 1975).

11. See *id.* at 67.

12. *Id.* at 72.

13. *Id.*

trust.[14] Under these circumstances, the superior court correctly altered its original decree to ensure that David pay child support to benefit Christopher.[15]

### B. The Superior Court Did Not Err by Refusing to Grant David Credit for a Variety of Incurred Expenses.

David contends that the settlement agreement entitles him to offset a number of expenses from his child support arrears. He contests two general categories of expenses: various expenses he incurred during Christopher's stay with him from June 1993 to November 1994, including child care, clothing, food, and out-of-pocket expenses incurred while Christopher's grandmother was caring for Christopher in Anchorage.[16]

The agreement authorized credits for visitation expenses where "agreed to be necessary by the parties." David characterizes his expenses during Christopher's extended visit with him—for such goods as books, clothing, cable television, sporting goods, and personal computers—as "visitation expenses." In contrast to David's extremely broad definition of allowable expenses under the agreement, Patricia testified to her understanding that "airline travel expenses were all that was to be deducted from the account" as "necessary" visitation expenses. Based on the agreement's language and this testimony, the superior court concluded that "expenses for food, clothing, child care, recreation, vacation, telephone, etc. cannot be used as credits toward the amount of child support due and owing under the agreement" because the text of the agreement or the under-

standing of the parties did not authorize these offsets. This conclusion is not clearly erroneous.

David also seeks an offset for the costs of Josephine's assistance in Christopher's care. He contends that Patricia agreed to offset these expenses from the trust fund. But David and Patricia's "Proposed Plan of Action," in which the parties agreed that Josephine would assist in child care while Christopher lived with David, expressly stated that David would pay for Josephine's travel expenses and would "assume full financial responsibility for Christopher's care." Based on this information, the superior court concluded that "[t]he parties never agreed that expenses for ... Ms. Josephine Brown's care of the child would be a deductible expense." We agree.

### C. The Superior Court Did Not Err by Granting CSED's Motion for Reconsideration as to Interest.

After the superior court issued its order adjudicating the child support obligations of the parties, CSED filed for reconsideration as to the interest to be charged on David's arrears. CSED argued that under Alaska statutory law, the proper rate of interest was 12% per year prior to October 1, 1996 and 6% per year thereafter, rather than the 10.5% specified in the court's order. The superior court granted CSED's motion and modified its final order to reflect the statutory interest rate. We agree with the court's decision.

---

**14.** David asserts that he fulfilled his duties under the agreement because "money to fund the trust has always been available": "[T]he fact that there was no official trust fund didn't make any difference" because "if something came up, travel came up, whatever came up that was a part of the agreement, I had to make sure that I could pa[y] for it and meet that obligation, and I always did." But even if David paid all the medical, visitation, and travel expenses that should have come out of the trust fund, he did not regularly make payments into the trust. He also testified that as of the time of trial he had not set aside any money in any account for Christopher's benefit and future college expenses.

**15.** Because we hold that the superior court correctly disestablished the trust, we need not con-

sider Patricia's arguments that the doctrine of unclean hands bars David's suit and that David's actions have mooted this appeal.

**16.** The "Proposed Plan of Action" executed in March 1993 specifically stated that it was only "a temporary working arrangement while [Patricia] is in school" and that it "does not abrogate the divorce decree." Although David was obligated to make payments into the trust fund, he also received the child tax deduction on his 1993 and 1994 tax returns. Thus, David concedes that under the "Proposed Plan of Action" he was legally obligated to make payments into the trust fund even though he had physical custody of Christopher beginning in June 1993.

Three different statutes guide the interest rate applicable to David's child support arrears: AS 25.27.020, AS 25.27.025, and AS 43.05.225. Alaska Statute 25.27.020(a)(2)(B) requires that CSED promulgate regulations establishing "a uniform rate of interest on arrearages of support that shall be charged the obligor upon notice if child support payments are 10 or more days overdue." Former AS 43.05.225(2)(B) set the statutory interest rate at 12% for claims accrued before October 1, 1996.[17] Alaska Statute 25.27.025 sets the interest rate at "six percent a year or a lesser rate that is the maximum rate of interest permitted to be imposed under federal law" for claims accruing after October 1, 1996.

David advances three arguments why these statutes should not apply. First, David restates his argument that the payments to the trust fund were not "child support" and therefore the statutes do not apply. For the reasons explained above, we reject this claim.

 Second, David claims his payments are not subject to the statutory interest rate because CSED can only charge interest on payments "required to be made by the obligor to CSED." Since his payments were originally due to Patricia, David argues that CSED cannot charge him interest on those payments. This claim is meritless. Alaska Statute 25.27.020(b) specifies that "[i]n determining the amount of money an obligor must pay to satisfy the obligor's immediate duty of support, [CSED] shall consider all payments made by the obligor directly to the obligee ... before the time the obligor is ordered to make payments through the agency." This statutory provision clearly indicates that the legislature did not intend for CSED to turn a blind eye to overdue payments simply because the agency was not yet directly involved in their collection. David has been under a continuing obligation to make monthly child support payments since 1987, and those payments are overdue.

Finally, David argues that he was without notice of his child support obligations be-cause he did not receive a computerized billing statement from CSED in the mail. But the superior court's order notified David of his obligations. We have dismissed claims of lack of notice in similar situations, implicitly adopting CSED's reasonable definition of the phrase "upon notice" in 25.27.020(a)(2)(B) to mean "on notice of the obligation to pay child support itself." [18]

## V. CONCLUSION

Because the superior court correctly determined that David should pay child support to Patricia, that the agreement allowed for only limited visitation credits, and that the overdue child support arrears should bear the statutory interest rate, we AFFIRM.

---

**17.** This section was repealed effective October 1, 1996. *See* ch. 107, § 46, SLA 1996.

**18.** *See Vokacek v. Vokacek,* 933 P.2d 544, 550–51 (Alaska 1997) (stating that delinquent obligor's assertion that he had no notice of his arrearages was "without merit").