Justin L. NELSON, Appellant,

v.

Erica R. NELSON, Appellee.

No. S–13928.

Supreme Court of Alaska.

Oct. 28, 2011.

10. *Torrey*, 872 P.2d at 187.

11. *Id.* at 188 n. 1.

12. *Id.* at 188.

15. 28 P.3d 286 (Alaska 2001).

Bonnie J. Coghlan, Law Office of Rita T. Allee, P.C., Fairbanks, for Appellant.

Shannon T. Morgan, Gazewood & Weiner, Attorneys at Law, P.C., Fairbanks, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

*OPINION*

CARPENETI, Chief Justice.

## I. INTRODUCTION

An Alaskan military couple divorced in 2008. Their agreement for custody of their two children was incorporated into the divorce decree. The following year, the father, who anticipated relocating with the military, sought modification of the custody arrangement. In its order denying modification, the superior court tried to give effect to the parties' custody agreement but did not independently analyze the best interests of the children. Because a substantial change in circumstances occurred, and because a custody decision must be based on an independent

best-interests analysis, we remand this case for the superior court to undertake a full best-interests inquiry. We also remand for the superior court to resolve a dispute concerning payment of a custody investigator.

## II. FACTS AND PROCEEDINGS

Justin Nelson and Erica Nelson married in 2000 while both were stationed in England with the U.S. Air Force. Together they had two children, a daughter born in 2001 and a son born in 2005. In 2006, they moved to Eielson Air Force Base near Fairbanks. The couple separated in 2007 and divorced in 2008.

At a settlement conference in January 2008, Justin and Erica—neither of whom was represented by counsel at the time—established a Parenting Agreement. The superior court adopted the terms of the Parenting Agreement in the findings and conclusions that accompanied their divorce decree. The superior court noted that the parties had worked "amicably" to resolve some disputes that arose from the divorce.

The Parenting Agreement provided for shared legal custody and equally divided physical custody on alternate weeks "until one or both parents move from the Fairbanks area." The agreement further provided:

> If in the future the parents don't reside in the same community, they agree one parent will have the children for the school year and other parent will have the children for summers and some school breaks.... They agree they will leave open the possibility if a child asks to live with the other parent, to consider that request, but no changes of custody between parents' homes will occur during a school year.

And:

> If a parent moves in the future, which the parents agree will occur eventually, they will have to create a parenting agreement for different communities. Until they have that agreement the children cannot be moved from their current community. But the children will have visits with the moving parent during breaks from school....

The record suggests that the parents at first adhered substantially to the terms of their agreement and resolved minor disputes without court intervention. But some disagreements required the court's intervention.

In June 2008 Erica lost her job as a surgical technician. About six weeks later, Erica filed a motion for modification of custody. She proposed moving with both children to Iowa before the academic year began on August 20, 2008; Erica sought primary custody with summer visitation for Justin. The court denied this motion on February 9, 2009. Erica did not appeal this order and apparently abandoned, at least temporarily, her plan to move to Iowa.

On February 6, 2009, Justin filed a motion for custody modification. (This motion was not ripe for consideration as of February 9, 2009, when Erica's motion for modification was denied.) Justin sought primary custody when the parents no longer resided in the same community. He took Erica's proposed move to Iowa as a change of circumstances. Justin also suggested that, as a result of his military service, he was likely to relocate some time after May 2011. Erica opposed the motion, requesting primary custody regardless of either parent's plans to move; she stated that the "alternate week schedule has left our children's lives in a constant state of upheaval and is all in all not working for them."

On Justin's motion, the superior court ordered appointment of Ted Sponsel as custody investigator. The court reserved for trial the issue of allocating between the parties the costs of Sponsel's services. Following his investigation, Sponsel recommended that when one parent moved from Fairbanks, Justin be given custody with the caveat that if Justin were deployed for more than three months, custody would revert to Erica until Justin returned.

Following a two-day trial, the superior court denied Justin's motion for modification. The order provided:

> The court does not find a change of circumstances, unanticipated by the parties when they signed their Parenting Agreement in 2008. They anticipated movement

by one or both parents, and agreed that the non-moving parent would retain custody for the school year.

Nevertheless, the court went on to order that if Justin "moves during the school year, then [the children] will reside primarily with Erica." The court also ordered entry of a communication plan between the parties. Neither order mentioned payment for Sponsel's investigation.

Justin appeals the order denying his motion for modification and argues that it was error not to address payment for the investigation.

## III. STANDARD OF REVIEW

 "We exercise our independent judgment when reviewing the legal interpretation of ... child custody agreements that are incorporated into divorce decrees."[1] Whether the superior court applied the correct legal standard in its custody determination is a question of law that we review de novo, "adopting the rule of law that is most persuasive in light of precedent, reason and policy."[2]

## IV. DISCUSSION

Justin argues that the superior court: (1) incorrectly interpreted the terms of the parties' Parenting Agreement, (2) failed to apply the correct legal standard, and (3) overlooked the issue of allocating costs for the custody investigation. Justin suggests that the superior court did not modify custody because it found no change in circumstances to justify modification. Erica characterizes the superior court's order differently. She argues that the superior court properly awarded her custody after it concluded that a change of circumstances justified modification and that the children's best interests justified award-

ing primary custody to her. We agree with Justin that the decision should be remanded to the superior court for a best-interests determination.

## A. There Has Been A Substantial Change Of Circumstances.

 Alaska Statute 25.20.110 authorizes courts to modify child custody and visitation awards if (1) there has been a substantial change in circumstances that justifies modification and (2) the modified arrangement is in the best interests of the child.[3] We have held that "a custodial parent's decision to move out-of-state ... amounts to a [substantial] change in circumstances as a matter of law."[4] The change in circumstances "must be demonstrated relative to the facts and circumstances that existed at the time of the prior custody order that the party seeks to modify."[5] As we have explained, "the change in circumstances requirement is intended to discourage continual relitigation of custody decisions, a policy motivated by the judicial assumption that finality and certainty in custody matters are critical to the child's emotional welfare."[6]

When Justin filed his motion for modification in February 2009, he suggested that, as a result of his military service, he was likely to relocate some time after May 2011. Although Justin's relocation may have seemed far away when he filed the motion for the modification, his anticipated move grew nearer as the superior court proceedings progressed. By the time the case went to trial, in May 2010, Justin's relocation constituted a change of circumstances "relative to the facts and circumstances that existed" at the time the prior custody order was entered. Though the change-of-circumstances rule is "designed to discourage discontented parents

1. *Brown v. Brown*, 983 P.2d 1264, 1267 (Alaska 1999).

2. *See McQuade v. McQuade*, 901 P.2d 421, 423 n. 3 (Alaska 1995) (quoting *Cox v. Cox*, 882 P.2d 909, 913 (Alaska 1994)).

3. *Melendrez v. Melendrez*, 143 P.3d 957, 960–61, 963 (Alaska 2006) (affirming custody modification where both prongs satisfied).

4. *Barrett v. Alguire*, 35 P.3d 1, 6 (Alaska 2001) (quoting *Acevedo v. Liberty*, 956 P.2d 455, 457 (Alaska 1998)) (internal quotation marks omitted).

5. *Peterson v. Swarthout*, 214 P.3d 332, 341 (Alaska 2009) (quoting *Jenkins v. Handel*, 10 P.3d 586, 589 (Alaska 2000)).

6. *Id.* at 340–41 (quoting *Gratrix v. Gratrix*, 652 P.2d 76, 82–83 (Alaska 1982)).

from continually renewing custody proceedings,"[7] parents should not be discouraged from planning ahead and seeking to modify custody arrangements in advance of an anticipated move. In numerous cases, we have concluded that an *anticipated* move satisfied the change-of-circumstances requirement.[8] Indeed, to do otherwise could result in very harsh consequences for children (for example, if the non-moving parent is actually unfit). Justin's anticipated relocation, like Erica's proposed move to Iowa, constituted a substantial change of circumstances in this case.

**B. The Superior Court Must Consider The Best Interests Of The Children Under AS 25.24.150(c).**

■ Justin demonstrated that a substantial change in circumstances would occur when he moved out of state. Thus, he has met the threshold requirement for modification of custody.[9] And the superior court must give full consideration to the best interests of the children before entering an order modifying custody. Alaska Statute 25.20.110(g) and AS 25.24.150(c) identify nine factors that the superior court must consider in its best-interests inquiry. The superior court has some leeway in determining what factors it "considers pertinent."[10] Nevertheless, the statute requires the superior court to consider each of the enumerated factors unless the court concludes, in light of the facts of a particular case, that certain factors have no bearing on the child's well-being.[11] When we review a custody modification order, we must determine whether the superior court gave due consideration to each of the pertinent statutory factors. Because the superior court in this case found no change of circumstances, it did not address certain statutory factors, such as the children's needs, each parent's ability to meet those needs, and the love and affection existing between the children and each parent. Thus, we remand this case for the superior court to address the statutory best-interests factors, as it deems necessary, in light of the facts of this case.

**C. The Parenting Agreement Does Not Dictate The Terms Of The Post–Relocation Custody Arrangement.**

■ In determining what custody arrangement is in the children's best interests, the superior court may properly take account of a custody agreement entered into by the parents.[12] However, a custody agreement cannot be enforced in the face of changed circumstances, unless the court independently determines, at the time of enforcement, that its terms are consistent with the best

---

7. *Nichols v. Mandelin,* 790 P.2d 1367, 1372 (Alaska 1990) (quoting *King v. King,* 477 P.2d 356, 360 (Alaska 1970)) (internal quotation marks omitted).

8. *See, e.g., Eniero v. Brekke,* 192 P.3d 147, 149–50 (Alaska 2008) (affirming superior court's decision to modify custody in light of mother's proposed move to Oregon); *Moeller–Prokosch v. Prokosch,* 53 P.3d 152, 153, 155 (Alaska 2002) (instructing courts in custody modification cases to assume a legitimately motivated move would take place when considering best interests of the child); *House v. House,* 779 P.2d 1204, 1207–08 (Alaska 1989) (concluding that father's proposed move to California constituted substantial change of circumstances).

9. The moving party is required to show a substantial change in circumstances, as a threshold matter, before the court moves on to consider the best-interests analysis. *Maxwell v. Maxwell,* 37 P.3d 424, 426 (Alaska 2001) (concluding that superior court was not required to make best-

interests determination where moving party failed to show substantial change in circumstances).

10. AS 25.24.150(c)(9).

11. *See* AS 25.24.150(d) ("In awarding custody the court may consider only those facts that directly affect the well-being of the child."); *S.N.E. v. R.L.B.,* 699 P.2d 875, 878 (Alaska 1985) ("When a court determines the best interests of the child under the changed circumstances doctrine, the scope of judicial inquiry is limited to facts directly affecting the child's well-being." (citing AS 25.24.150(d))); *Craig v. McBride,* 639 P.2d 303, 306 (Alaska 1982) (instructing superior court to consider mother's relationship instability only to extent that it adversely affects child or otherwise affects mother's parenting abilities).

12. *See, e.g., McClain v. McClain,* 716 P.2d 381, 385 (Alaska 1986) ("The custody agreement is a pertinent factor because it demonstrates that cooperation between the parents is possible.").

interests of the child.[13]

The superior court must undertake a new best-interests analysis before modifying custody in this case. As we understand the order on appeal, the superior court granted Erica custody "during the school year" in order to give effect to the terms of the Parenting Agreement. Because this custody modification was not based on a full best-interests inquiry, we vacate the order granting Erica custody. At most, the terms of the Parenting Agreement identify the agreed-upon status quo until a final court-approved arrangement takes effect.

■ In our view,[14] Justin and Erica did not agree upon a final custody arrangement in the event that one parent relocates. Instead, the agreement states that a new agreement will need to be reached "[i]f a parent moves in the future." The terms of the Parenting Agreement provide an interim custody arrangement—that the children remain with the non-moving parent in Fairbanks—until a final arrangement takes effect. It will be up to the superior court to determine the permanent custody arrangement that will be in the children's best interests. If that interim arrangement is not in the best interests of the children, then the superior court will determine what arrangement is in the best interests of the children for the duration of the school year and until a substantial change in circumstances occurs.

### D. The Superior Court Must Address Payment Of The Custody Investigator.

Because we see no indication that the superior court resolved the issue of allocating the custody-investigation costs, it must decide this issue on remand.

13. *See id.; see also Crane v. Crane*, 986 P.2d 881, 887 (Alaska 1999) ("In making any custody determination—whether following a contested trial or upon the parties' agreement—the superior court must base its decision on the best interests of the child.").

14. Interpretation of a custody agreement presents a question of law, which we review de novo.

## V. CONCLUSION

We VACATE the custody modification order and REMAND the case for the superior court to consider the best interests of the children and the allocation of custody investigation costs.

STOWERS, Justice, with whom WINFREE, Justice, joins, dissenting in part.

STOWERS, Justice, with whom WINFREE, Justice, joins, dissenting in part.

Justin and Erica Nelson divorced in 2008 and entered into a Parenting Agreement governing their two children. Their agreement, which was adopted by the superior court, provided for shared legal and physical custody while both parents lived near Fairbanks. The agreement also expressly anticipated a move from Fairbanks by one or both parents, and set forth custody arrangements for that eventuality.

In February 2009, Justin sought modification of custody on the grounds that he would soon relocate to the continental United States. A hearing was held, after which the superior court denied Justin's motion to modify custody. The superior court found that the parties' Parenting Agreement contemplated the upcoming move, and interpreted the agreement to provide school-year custody to Erica, the non-moving parent. The court today vacates the superior court's order and remands for a best-interests assessment. Because I would affirm the superior court's decision, I dissent in part.[1]

### A. The Parties Agreed Upon, And The Superior Court Adopted, The Parenting Agreement Dictating The Custody Arrangement In The Event That One Parent Relocates.

In its opinion, the court concludes that "[i]n our view, Justin and Erica did not agree upon a final custody arrangement in the event that one parent relocates."

*See Brown v. Brown*, 983 P.2d 1264, 1267 (Alaska 1999) (citing *Cedergreen v. Cedergreen*, 811 P.2d 784, 786 n. 2 (Alaska 1991)).

1. I agree with the court that the issue of payment of the custody investigator's fees must be remanded for consideration.

In my view, the Nelsons agreed upon precisely this. The Parenting Agreement anticipated that a parent would move away from Fairbanks and detailed custody arrangements to take effect in that case. Paragraph 11 of the Agreement states that "[i]f in the future the parents don't reside in the same community, they agree one parent will have the children for the school year and the other parent will have the children for summers and some school breaks.... [Also,] no changes of custody between parents' homes will occur during a school year."[2] Paragraph 12 goes on to provide that:

> If a parent moves in the future, *which the parents agree will occur eventually,* they will have to create a parenting agreement for different communities. *Until they have that agreement the children cannot be moved from their current community.* But the children will have visits with the moving parent during breaks from school, as follows, *until an updated agreement is reached:*
>
> a. Summers, starting from a week after school is out until two weeks before school resumes;
>
> b. Alternate winter breaks....
>
> c. Alternate spring breaks....

(Emphasis added.)

The Nelsons contemplated and, in the Parenting Agreement, specifically prepared for the eventuality that one of the parties would move from Fairbanks. I would construe their Agreement as the superior court did, namely to provide that in the event of a move, Justin and Erica "agreed that the non-moving parent would retain custody for the school year."[3]

### B. There Has Been No Change In Circumstances Warranting Custody Modification.

The superior court found no change in circumstances because one parent's move from Fairbanks was not only anticipated but explicitly planned for in the custody agreement.[4] I would affirm the superior court's decision in this regard.

To modify a custody award, "[t]he parent seeking modification must first establish that there has been a 'significant change in circumstances affecting the child's best interests.'"[5] We have held that as a matter of law, one parent's relocation out of Alaska constitutes a significant change in circumstances.[6] This triggers a hearing on the children's best interests.[7]

But we also have stated that a change in circumstances "must be demonstrated relative to the facts and circumstances that existed at the time of the prior custody order that

---

2. Paragraph 11 also references a "# 6." Paragraph 6 concerns travel for church or school activities. Justin asserts that "# 6" in fact references a nonexistent section. In either event, it does not modify the meaning of paragraph 11 as executed.

3. The court relies on the fact that the Parenting Agreement stipulates that a new agreement will need to be reached if a parent moves from Fairbanks. But the language in paragraph 12 seems limited to logistical modifications, not to the underlying premise that custody would stay with the parent in Fairbanks. But even if paragraph 12 is not so limited, the fact that the parents agreed that they would at some point have to create a new parenting agreement in the future in no way invalidates their agreement that the nonmoving parent would retain principal custody of the children during the school year.

4. The superior court characterized the Agreement as providing that Justin and Erica "anticipated movement by one or both parents, and agreed that the non-moving parent would retain custody for the school year."

5. *Williams v. Barbee,* 243 P.3d 995, 1000 (Alaska 2010) (quoting *Ebertz v. Ebertz,* 113 P.3d 643, 647 (Alaska 2005)); *see also Peterson v. Swarthout,* 214 P.3d 332, 340 (Alaska 2009) (quoting *J.L.P. v. V.L.A.,* 30 P.3d 590, 595 (Alaska 2001)) ("Under AS 25.20.110(a), a court may modify custody only if it finds 'a change in circumstances' that is 'significant or substantial.'"); *House v. House,* 779 P.2d 1204, 1207 (Alaska 1989).

6. *Barbee,* 243 P.3d at 1000 (citing *Chesser–Witmer v. Chesser,* 117 P.3d 711, 717 (Alaska 2005) (explaining that a change of circumstances "exists as a matter of law when a custodial parent [including a parent with joint custody] moves out of state")).

7. *McQuade v. McQuade,* 901 P.2d 421, 424 n. 6 (Alaska 1995).

the party seeks to modify."[8] Here, both parties clearly contemplated and planned for one parent's move.

Moreover, courts should "avoid disturbing and upsetting [children] with repeated custody changes."[9] "[T]he change in circumstances requirement is intended to discourage continual relitigation of custody decisions, a policy motivated by the judicial assumption that finality and certainty in custody matters are critical to the child's emotional welfare."[10] In other words, a custody situation that has been settled— such as the custody arrangement accompanying an upcoming move—should not be revisited unless the situation has notably changed, and the parents' mere belief or agreement that relitigation is necessary is insufficient to trigger modification of an award.[11]

I would therefore affirm the superior court's conclusion that no change of circumstances exists sufficient to warrant modification of custody.

### C. The Superior Court Did Not Err In Enforcing The Parenting Agreement.

The court notes that the superior court is not bound by the Parenting Agreement, and concludes that the superior court erred by modifying custody without undertaking a best-interests analysis.

But the superior court did not modify custody at all—it simply enforced the parties' existing, court-approved Parenting Agreement. The Nelsons may have reached their Parenting Agreement by way of settlement and without counsel, but it is apparent that they worked with the Fairbanks trial court's child custody negotiators to come to their agreement: these kinds of settlements are encouraged by the legislature and by this court,[12] and the superior court specifically "approved" the Agreement in its Findings and Conclusions for the divorce.[13]

Stipulated custody arrangements are of course subject to modification under the changed circumstances doctrine.[14] But in my view it should take more than one parent's move from Fairbanks—a specific eventuality that the parties contemplated and planned for—to show a substantial change in circumstances to modify the custody arrangement set out in this Parenting Agreement.

The court today pays little heed to the parties' agreement, and finds instead that when parents agree on a custody arrangement that contemplates an upcoming move— even when this agreement has been explicitly adopted by the superior court—one parent can still invoke this same upcoming move as a changed circumstance for custody modification purposes. In my view this conclusion is incorrect, and also stretches the meaning of "changed circumstance" too far. What is the point of explicitly providing for foreseeable changes in a custody agreement if the foreseen move will trigger a new best interests analysis?

### D. Conclusion

The Nelsons' Parenting Agreement reflects careful consideration of the children's

---

8. *Peterson*, 214 P.3d at 341 (quoting *Jenkins v. Handel*, 10 P.3d 586, 589 (Alaska 2000)) (internal quotation omitted); *see also King v. King*, 477 P.2d 356, 359 (Alaska 1970) (quoting *Houger v. Houger*, 449 P.2d 766, 773 (Alaska 1969) (concluding that a superior court is "justified in modifying ... custody arrangements only if it had been shown that since the date of entry of the judgment changed facts and circumstances affecting the welfare of the children required modification for the best interests of the children.")).

9. *McLane v. Paul*, 189 P.3d 1039, 1043 (Alaska 2008) (citing *S.N.E. v. R.L.B.*, 699 P.2d 875, 878 (Alaska 1985)).

10. *Peterson*, 214 P.3d at 340–41 (quoting *Gratrix v. Gratrix*, 652 P.2d 76, 82–83 (Alaska 1982) (internal quotation marks omitted)).

11. *See Morino v. Swayman*, 970 P.2d 426, 428 (Alaska 1999) (requiring that the movant prove a substantial change as a threshold to custody modification).

12. *See Crane v. Crane*, 986 P.2d 881, 888–89 (Alaska 1999).

13. It was at that point that if questions about the children's best interests were raised, the superior court had the discretion to inquire further before adopting and approving the Agreement. *Crane*, 986 P.2d at 889.

14. *Crane*, 986 P.2d at 889 n. 4 (citing *Garding v. Garding*, 767 P.2d 183, 185 (Alaska 1989)).

best interests in stability; it also expressly contemplates a move by one parent from Fairbanks and the parties agreed upon custody arrangements when this occurred. I agree that remand for determination of the custody investigator fee is appropriate, but because I would affirm the superior court's order declining to modify custody and enforcing Justin and Erica's Parenting Agreement, I respectfully dissent in part.