*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| SUSAN M., | ) | |
| | ) | Supreme Court No. S-15602 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-09-11090 CI |
| v. | ) | |
| | ) | O P I N I O N |
| PAUL H., | ) | |
| | ) | No. 7069 – December 11, 2015 |
| Appellee. | ) | |
| _____ | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Frank A. Pfiffner, Judge.

Appearances: Timothy R. Watts, Anchorage, for Appellant. Notice of nonparticipation filed by Wayne Anthony Ross, Ross & Miner, P.C., Anchorage, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

STOWERS, Justice.

## I.    INTRODUCTION

This appeal arises out of a custody dispute between Susan M. and Paul H.[1] It involves (1) Susan's motion to sanction Paul for wrongfully denying her visitation and (2) her motion to enjoin Paul from relocating to California with the children after the 2013-14 school year, a move the superior court previously approved.

---

[1]    We use initials and pseudonyms to protect the privacy of the parties.

The superior court denied both motions, and Susan appeals. We affirm but strongly caution that a parent's unilateral suspension of the other parent's visitation based on perceived violations of a custody agreement is improper in all but exceptional circumstances. Even where such circumstances exist, the concerned parent should immediately inform the court of the problem.

## II.    FACTS AND PROCEEDINGS

Susan M. and Paul H. are the divorced parents of James (born June 2003), Preston (born December 2004), and Jennifer and Jacquelyn (twins born March 2007).[2] In 2012 Paul discovered that Susan had surreptitiously left Alaska with the children. Susan had primary physical and sole legal custody of the children at that time. Paul was working on the North Slope on a three-week rotating schedule, and he exercised unsupervised visitation with overnights when he was not working. After Susan left Alaska, Susan and the children lived in several states, and Susan later claimed that she left Alaska to protect the children from Paul, who she alleged was a sexual predator.

Finding that Susan was "a bad parent" and had "taken it upon herself to repeatedly flout the [court's] orders" by denying Paul's visitation and running from state to state with the children, Superior Court Judge Frank A. Pfiffner subsequently modified custody to give Paul sole legal and physical custody, with Susan receiving very limited supervised visitation. The children were located in Colorado and sent back to Paul in Alaska; Susan was arrested and later pleaded guilty to misdemeanor custodial

---

[2]    Paul's stepdaughter, Sylvia, also lived with Paul and Susan during the marriage. Susan came to believe that Paul was abusing Sylvia, and a custody investigator later noted that Susan's "belief that Paul is a sex offender has been at the core of her litigation." The Office of Children's Services (OCS) has never substantiated a child abuse complaint against Paul.

interference.[3] Even after her guilty plea, Susan still indicated that she did not believe she had done anything wrong and that she would act on her own again if she felt it was necessary.

In May 2013 Paul requested permission to relocate with the children to California where he had greater family support. Susan opposed the motion, and the superior court ordered a custody investigation. The custody investigator recommended that, so long as OCS did not substantiate any of Susan's abuse allegations against Paul, he should retain sole legal and physical custody and be permitted to move to California, with Susan still having only supervised visitation. The custody investigator also recommended that OCS file a child-in-need-of-aid petition for the children if it did substantiate any of the abuse allegations against Paul.

Susan and Paul reached a 26-page settlement agreement shortly after the custody investigator issued her report. Under the agreement Paul retained sole legal and physical custody with Susan having supervised visitation only. Susan's visitation supervisor was supposed to be within sight and sound of Susan and the children "as much as possible, recognizing that some activities may allow for the supervisor to maintain Susan and the children [within] sight or sound, but not both, for periods of time."

The agreement also allowed Paul to relocate to California with the children after they completed the 2013-14 school year, and it contained terms governing the

---

[3]     AS 11.41.330 (a)(1) ("A person commits the crime of custodial interference in the second degree if (1) being a relative of a child under 18 years of age . . . and knowing that the person has no legal right to do so, the person takes, entices, or keeps that child . . . from a lawful custodian with intent to hold the child . . . for a protracted period.").

events after the relocation to California. The agreement seemed to assume that both Paul and Susan would relocate.

Paul and Susan subsequently testified that they believed the agreement was in the children's best interests. The superior court concurred and adopted the settlement agreement as its custody order.

Approximately two months later — and shortly before the end of the 2013-14 school year — Susan filed a motion seeking sanctions against Paul under AS 25.20.140,[4] alleging that Paul had willfully and without just excuse denied her visitation. Susan also requested make-up visitation. Paul opposed, and the superior court scheduled a hearing for May 2014.

Three days before the hearing, Susan filed her reply and a notice that she intended to ask the court to modify the custody order to prevent Paul from moving to California. She also raised new domestic violence allegations against Paul. At the hearing, Susan made an oral motion for an injunction and to further modify the custody order after Paul's counsel noted that Paul intended to leave for California that evening, after the hearing.

While the superior court was skeptical that Susan could prove a substantial change in circumstances, it allowed her to provide evidence to support her motion. Susan and two of her visitation supervisors testified regarding Paul's behavior and their observations of the children. Among other things, they alleged that Paul acted suspiciously by waiting outside the North Star Animal Hospital during one of Susan's

---

[4] AS 25.20.140 provides a non-custodial parent with a cause of action for failure to permit visitation when the custodial parent "willfully and without just excuse" denies the non-custodial parent visitation. Susan's brief also cites to AS 25.24.140 when quoting language from AS 25.20.140. We address only AS 25.20.140, as the reference to AS 25.24.140 is seemingly in error.

visits; Paul yelled at Susan and a supervisor in front of the children after Susan took Jacquelyn and Jennifer to OCS; Paul abused Jennifer; and Paul gave Jacquelyn a black eye.

Paul also testified, primarily rebutting the allegations made against him. Paul explained that he waited outside the North Star Animal Hospital for about an hour and a half because he had witnessed Susan and the children leave the building without the supervisor, and he had wanted to make sure Susan was not trying to run away again. Paul specifically denied acting in a threatening manner towards Susan and the supervisor after the OCS visit. Paul also denied abusing Jennifer, and he explained that Jacquelyn's black eye was an accident.

Paul confirmed that he had denied Susan visitation, but he claimed that he had done so because she had repeatedly violated the supervised visits requirement and he believed she would continue to do so. He claimed he was concerned that, without supervision, Susan would try to manipulate the children. And he stated in his affidavit, filed prior to the hearing and incorporated into his testimony, "Every time I drop the children off I wonder if I will see them again."

The superior court denied Susan's motions. On Susan's motion for an injunction, the court found it unlikely that Susan could prevail on the merits by showing a substantial change in circumstances because (1) Paul's move to California was fully anticipated in the settlement agreement, which Paul and Susan agreed was fair and in the children's best interests, and (2) Susan had failed to show she was likely to succeed in demonstrating that Paul had committed domestic violence. The court generally found that Paul was more credible on the domestic violence allegations, that Paul's alleged actions did not rise to the level of domestic violence, and that it appeared Susan was suffering from "buyer's remorse" with respect to the settlement agreement.

The superior court also refused to sanction Paul under AS 25.20.140. The

court found Paul was not liable under AS 25.20.140, concluding that Paul had not acted without just excuse because the visitations had restarted and Susan had repeatedly violated the supervision requirement of her visitation with the children. Susan appeals.[5]

## III. STANDARD OF REVIEW

The interpretation of a statute is a question of law that we review de novo,[6] "adopt[ing] the rule of law that is most persuasive in light of precedent, reason, and policy."[7]

"We review the best interests determination supporting a visitation award to determine whether 'the superior court has abused its discretion or if its controlling findings of fact are clearly erroneous.' "[8] "A decision constitutes abuse of discretion if it is 'arbitrary, capricious, manifestly unreasonable, or . . . stems from an improper motive.' "[9] And findings of fact are clearly erroneous when we are left with a "definite and firm conviction . . . that a mistake has been made."[10]

---

[5]     Paul filed a notice of non-appearance and has not participated in this appeal.

[6]     *Jimerson v. Tetlin Native Corp.*, 144 P.3d 470, 472 (Alaska 2006) (citing *Kodiak Island Borough v. Roe*, 63 P.3d 1009, 1012 n.6 (Alaska 2003)).

[7]     *Rockstad v. Erikson*, 113 P.3d 1215, 1219 (Alaska 2005) (citing *Rausch v. Devine*, 80 P.3d 733, 737 (Alaska 2003)).

[8]     *Hawkins v. Williams*, 314 P.3d 1202, 1204 (Alaska 2013) (quoting *Osterkamp v. Stiles*, 235 P.3d 178, 183 (Alaska 2010)).

[9]     *Roderer v. Dash*, 233 P.3d 1101, 1106 (Alaska 2010) (quoting *Shea v. State*, 204 P.3d 1023, 1026 (Alaska 2009)).

[10]     *Dunn v. Dunn*, 952 P.2d 268, 270 (Alaska 1998) (quoting *R.F. v. S.S.*, 928 P.2d 1194, 1196 n.2 (Alaska 1996)) (internal quotation marks omitted).

We review both the denial of a preliminary injunction and the imposition of sanctions under AS 25.20.140 for abuse of discretion.[11]  But the legal determinations underlying the superior court's denial of an injunction are reviewed de novo.[12]

## IV.    DISCUSSION

### A.    The Superior Court Did Not Err When It Denied Susan's Motion For Sanctions And Make-Up Visitation.

Susan's challenge to the superior court's denial of her motion for sanctions and make-up visitation under AS 25.20.140 requires us to consider several issues.  First, we must conduct a factual review to determine whether the superior court clearly erred in finding that Paul denied Susan visitation because of Susan's past violations of the custody order.  Next, we consider whether, based on those facts, the superior court erred in concluding that Paul had just excuse for denying Susan visitation.  This analysis requires us to determine the meaning of "without just excuse" in AS 25.20.140 and then decide how the standard applies in this case.[13]

---

[11]    *Haggblom v. City of Dillingham*, 191 P.3d 991, 995 (Alaska 2008) (citing *Smallwood v. Cent. Peninsula Gen. Hosp.*, 151 P.3d 319, 322 (Alaska 2006)) (regarding the standard of review for denial of a preliminary injunction); *Lestenkof v. Lestenkof*, No. S-14081, 2012 WL 2053689, at *2 (Alaska June 6, 2012) (regarding AS 25.20.140).

[12]    *See City of Kenai v. Friends of Recreation Ctr., Inc.*, 129 P.3d 452, 455 (Alaska 2006).

[13]    Susan also argues that the superior court erred when it held that AS 25.20.140 only allowed it to grant her $200 for each missed visitation instead of granting make-up visits or other equitable relief as she requested.  We do not reach this issue because we affirm the court's decision that Paul did not violate AS 25.20.140.

### 1. The superior court did not clearly err when it found that Paul denied Susan visitation because of Susan's past violations of the custody order.

Susan argues that Paul denied her visitation to retaliate against her for reporting that he may have abused Jennifer, pointing to "[t]he temporal proximity of the OCS report and the termination of the visits" for support. Paul responded in the superior court that he denied Susan's visitation because he was fearful she would abscond with the children again. The superior court was thus required to make factual findings regarding Paul's motivation and both parties' credibility.

The superior court found that there were sight and sound violations during Susan's supervised visitation[14] and that Paul had not acted "completely without just cause" because of these supervision violations. We understand the court's statements as implicitly finding that Susan's violations of the supervised visitation requirement motivated Paul to deny her future visitation.

The court's findings regarding Paul's motivations are primarily a credibility determination. Paul testified that he denied Susan visitation because of the supervision violations and because he "just couldn't take it anymore." He expressed specific concerns that Susan might try to manipulate the children. And in the affidavit incorporated into his oral testimony, he stated, "[E]very time I drop the children off I wonder if I will see them again." His affidavit also correctly noted that even the custody investigator "was not confident that [Susan] would not disappear with the children

---

[14] As noted above, the superior court's visitation order required Susan's visitation supervisor to remain within sight and sound of Susan and the children "as much as possible, recognizing that some activities may allow for the supervisor to maintain Susan and the children [within] sight or sound, but not both, for periods of time." Paul alleged, and the superior court found, that Susan violated this term by removing the children from the supervisor's sight and sound.

again." In the face of this record, Susan argues that "[t]he temporal proximity of the OCS report and the termination of the visits" demonstrates that Paul was actually retaliating against Susan for reporting possible abuse to OCS.

Susan's argument that Paul denied her visitation to retaliate against her is unpersuasive in light of the evidence presented and the superior court's essential role in viewing witnesses and weighing evidence.[15] The court did not commit clear error in finding that Paul denied Susan visitation because she had violated the requirement that her visitation be supervised.

### 2. The superior court did not err when it concluded that Paul had a just excuse for withholding the children.

Susan contends that the superior court erred when it ruled that Paul's reasons for withholding the children gave him a just excuse to do so. She argues that "[n]either the type of activities the children participate in while visiting[16] nor the conduct of the supervisor for supervised visits is . . . a just excuse."

---

[15] "The superior court's factual findings enjoy particular deference when they are based primarily on oral testimony, because the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence." *In re Adoption of S.F.*, 340 P.3d 1045, 1047 (Alaska 2014) (quoting *William P. v. Taunya P.*, 258 P.3d 812, 814 (Alaska 2011)) (internal quotation marks omitted).

[16] We note that the superior court's ruling does not appear grounded in the types of activities the children participated in during their visits with Susan, and we therefore do not address this contention in any detail.

a.      **A custodial parent denies visitation "without just excuse" when he denies visitation for any reason other than a good faith and reasonable belief that not permitting the visitation is in the child's best interests.**

Alaska Statute 25.20.140(a) provides for sanctions against a child's custodian when the custodian "willfully and without just excuse" prevents another person from exercising court-ordered visitation with the child. But the statute provides only broad guidance regarding the meaning of "just excuse," stating:

> "[J]ust excuse" includes illness of the child which makes it dangerous to the health of the child for visitation to take place in conformance with the court order; "just excuse" does not include the wish of the child not to have visitation with the person entitled to it.[17]

We have rarely been called upon to discuss AS 25.20.140 or its criminal analog, AS 11.51.125.[18] But we did discuss the meaning of "without just excuse" in *L.L.M. v. P.M.*, a case concerning attorney's fees awards on custody-related motions.[19] In *L.L.M.*,

---

[17]      AS 25.20.140(c)(3).

[18]      *See* ch.126, §§ 2-3, SLA 1977. AS 25.20.140, the current version of the statute, was previously codified as AS 09.55.238 and AS 25.24.300. There has been no change to the language during these renumberings. AS 11.51.125 was previously codified as AS 11.36.010.

[19]      754 P.2d 262, 265 (Alaska 1988). The holding in *L.L.M.* regarding the appropriate standard applicable to awards of attorney's fees and costs related to a motion to modify, vacate, or enforce a custody order has since been abrogated in part by AS 25.20.115. This change in the law does not impact our analysis in this appeal.

we quoted AS 25.20.140[20] and emphasized the "willfully and without just excuse" language,[21] holding,

> The statutory standard of "willfully and without just excuse" appears appropriate in determining the question of attorney's fees after a motion to amend or enforce a custody or visitation order is adjudicated. In that way the unsuccessful party *who reasonably, and in good faith, believes that his or her action was justified by the best interests of the children* will not be deterred from action by the possibility of an award of fees and costs.[22]

Thus, we interpreted acting "without just excuse" as when a parent acts other than "reasonably, and in good faith, believ[ing] that his . . . action was justified by the best interests of the children."[23]

We applied this standard in *Lestenkof v. Lestenkof*,[24] when a father allowed his teenage daughter to skip her mother's visitation because the daughter refused to go.[25] Despite AS 25.20.140's statement that a child's wish not to have visitation with a parent is not a "just excuse," we held the superior court's decision not to sanction the father was

---

[20]     The court in *L.L.M.* quoted AS 25.24.300. This statute has since been renumbered, with no changes to its wording, as AS 25.20.140.

[21]     *Id.* at 264-65.

[22]     *Id.* at 265 (emphasis added).

[23]     *Id.*

[24]     No. S-14081, 2012 WL 2053689 (Alaska June 6, 2012); *see also Kessler v. Kessler*, 827 P.2d 1119, 1120 (Alaska 1992) (per curiam) (reiterating and applying the standard in *L.L.M.*).

[25]     *Lestenkof*, 2012 WL 2053689, at *1.

not erroneous given the facts of that case, stating, "we do not believe the legislature intended to force visitation when it is not in the best interests of the child."[26]

Although the "without just excuse" standard was not the primary issue in *L.L.M.*, we believe *L.L.M.* provides the appropriate interpretation of that standard. The legislative history regarding AS 25.20.140 and AS 11.51.125 does not shed any light on what the legislature meant when it used the phrase "without just excuse." But the standard from *L.L.M.* is consistent with the general statutory scheme regarding child custody and reflects good public policy.

The overarching principle when discussing child custody is the best-interests-of-the-child standard in AS 25.20.110 and AS 25.24.150.[27] The standard in *L.L.M.* reflects and reinforces the importance of the best interests of the child. We do not believe the legislature intended that custodial parents who deny visitation when they have a reasonable and good faith belief that permitting visitation is not in a child's best interests should be punished. Otherwise, the legislature would not have provided that a "just excuse" for preventing visitation will not lead to sanctions.

Therefore, we reaffirm that a parent will be found to have denied visitation without just excuse when that parent denies visitation on any ground other than a reasonable and good faith belief that denying the visitation is in the child's best interests.

### b. The superior court did not err when it held that Paul had not denied Susan visitation without just excuse.

We now turn to the heart of Susan's argument: whether the superior court improperly found that Paul had not acted willfully and without just cause. Although the superior court did not use the precise language we used in *L.L.M.*, we conclude that the

---

[26]     *Id.* at *2.

[27]     AS 25.24.150(c).

superior court's reasons for not sanctioning Paul are sufficient to find that he acted reasonably and in good faith to protect the children's best interests.

Paul's concern appears to have been Susan's repeated violation of the condition that her visitation be supervised, that she would continue to do so, and that the violations could worsen. The superior court credited Paul's professed motives for denying the visitation. The court also noted that it had previously found — and both parents had agreed — that the earlier settlement agreement was in the children's best interests. That agreement specifically provided that Susan's visits with the children would be supervised.

The supervision requirement appears grounded in two concerns: (1) that Susan might again flee with the children and (2) that Susan would "grill[] the children about their veracity." Indeed, Susan's ability to transition to unsupervised visitation was predicated on her obtaining an expert assessment concluding that there was a "minimal" risk of her fleeing with the children, that she had "stopped grilling the children about their veracity[,] and that her conversations with the children [were] not damaging in any other way."

Susan's past conduct and continuing concerns that she might again flee with the children led to the need for sight and sound supervision. The trial court found that Susan prevented Paul from seeing the children by taking the children and moving them through several states until she was eventually arrested for custodial interference. Even after her return to Alaska and her guilty plea of custodial interference, Susan still indicated that she did not believe she had done anything wrong and that she would act on her own again if she felt it was necessary. The trial court noted that she also persisted in claiming that Paul was a sex offender, despite numerous investigations finding no evidence to support her claim.

The second major concern was that Susan "grill[ed] the children about their veracity." The custody investigator noted that "[b]y doing so, she implies to them that she thinks they may be lying, and this may well be damaging her relationship with them." And we specifically note that the custody investigator apparently had such significant concerns regarding Susan that she recommended that if any abuse allegations against Paul were substantiated, OCS should file a child-in-need-of-aid petition and take custody of the children instead of recommending that the children be placed with Susan.

Considering all of the underlying facts together, we find no error in the superior court's conclusion that Paul did not act unreasonably and in bad faith to protect the children's best interests when he denied Susan's visitation. It is only because the superior court determined that Paul's resort to self-help — refusing visitation to Susan — was supported by a just excuse that protected the children's best interests that we affirm the superior court's decision that Paul was not liable for sanctions under AS 25.20.140. But we emphasize that as a general matter we strongly disapprove of parents engaging in self-help without first seeking the court's intervention. Only in exceptional cases should the superior court condone a parent's resort to self-help.

B.     **The Superior Court Did Not Refuse To Consider Susan's Oral Motion To Modify Custody.**

Susan argues that the superior court abused its discretion when it refused to consider her motion to modify custody because the motion was not made in writing. But our review of the record indicates that while the superior court may have expressed skepticism regarding Susan's chances of prevailing, the court allowed her to present significant evidence in support of her motion. The court's oral ruling addressed Susan's motion to modify, describing the "big issue" as whether the court "should grant some kind of an injunction or recognize this oral motion to modify pursuant to AS 25.20.110." The court made specific findings regarding Susan's allegations based on the testimony

it heard and denied the motion. Thus, the court allowed Susan to present evidence and argue regarding her motion to modify and ruled on the motion on its merits. The court did not refuse to consider the motion; Susan's argument to the contrary is unpersuasive.

### C. The Superior Court Was Not Required To Conduct A Best-Interests Analysis.

Deciding a motion to modify custody or visitation is a two-step process.[28] The superior court must first find that there has been a substantial change in circumstances that justifies revisiting the custody or visitation situation.[29] If there has not been a substantial change in circumstances, the analysis ends.[30] If there has been a substantial change in circumstances, the superior court must analyze the then-current best interests of the children using the factors in AS 25.20.110. After considering the then-best interests of the children, the superior court may leave the existing custody and visitation framework in place, modify it in part, or modify it in whole.[31]

Susan argues that "[b]ecause an oral motion to modify was filed, the standard to be applied to Susan's request to enjoin removal of the children from the state should have been the best interest standard." She contends that Paul's impending move out of Alaska met the predicate requirement that there be a substantial change in circumstances. Susan criticizes the superior court for failing "to determine if [Paul's] move was for legitimate reasons." She claims that she was denied "her right to an evidentiary hearing on the motion to modify," but we have held in the previous section

---

[28] *Nelson v. Nelson*, 263 P.3d 49, 52 (Alaska 2011) (citing AS 25.20.110).

[29] *McLane v. Paul*, 189 P.3d 1039, 1043 (Alaska 2008).

[30] *See id.*

[31] *Nelson*, 263 P.3d at 53.

-15- 7069

that she was not so denied. Alternatively, she argues that "the denial of visitation and the reasons for denial were sufficient to establish grounds for an evidentiary hearing."

Susan's argument ignores two essential facts. First, Susan had explicitly agreed that Paul — who had sole legal and physical custody of the children — would "remain in Alaska to allow the children to finish the current school year in Wasilla, [*and would*] *then . . . be permitted to relocate to California if he so desires.*" (Emphasis added.) References to Paul and the children moving to California appear throughout the settlement agreement. Second, Susan had previously testified that the terms of the settlement agreement were in the children's best interests. The superior court similarly found the terms of the agreement to be in the children's best interests when it made the settlement agreement its order.

While Susan is correct that we have held "the custodial parent's decision to leave the state with the children constitutes a substantial change in circumstances," neither case that she cites for support involved a situation where the non-custodial parent previously agreed that the custodial parent's move was in the children's best interests.[32] Indeed, if both parties specifically contemplate and plan for a move to a new state in their custody agreement, it is difficult to see how that anticipated move could constitute a substantial change in circumstances. The superior court correctly concluded that Paul's impending move to California did not constitute a substantial change in circumstances on the facts of this case.

Susan's argument that Paul's denial of her visitation and his reasons for that denial entitled her to an evidentiary hearing is similarly without merit. As noted above, the superior court found that Paul had justifiably cancelled Susan's visitation because she

---

[32]    *Misyura v. Misyura*, 244 P.3d 519, 520-21 (Alaska 2010); *see Rego v. Rego*, 259 P.3d 447, 449-52 (Alaska 2011).

had violated the supervision requirement. It is difficult to see how Paul justifiably denying Susan visitation could represent a substantial change in circumstances that would support restraining Paul's ability to move to California.

Finding a substantial change in circumstances based on justifiably denied visitation would unreasonably increase the uncertainty that the children at the center of a custody dispute already face. The children should not be forced to once more doubt the permanency of their home when the custodial parent reasonably and in good faith acts to protect their best interests in a relatively minor way that negatively impacts the non-custodial parent's rights. And the requirement that there be a substantial change in circumstances is motivated, in part, by a desire to protect children from exactly this type of uncertainty.[33]

Therefore, the superior court was not required to analyze the best interests of the children because Susan failed to demonstrate that there had been a substantial change in circumstances that would justify modifying the court's custody and visitation order.

## V. CONCLUSION

For the reasons stated above, we AFFIRM the superior court's decision.

---

[33]    *McLane*, 189 P.3d at 1043 ("We require [a substantial change in circumstances] to maintain continuity of care and to avoid disturbing and upsetting the child with repeated custody changes . . . . '[C]hildren should not be shuttled back and forth between divorced parents unless there are important circumstances justifying such change.' " (quoting *Nichols v. Nichols*, 516 P.2d 732, 735 (Alaska 1973)).